UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT REDNER,<br><br>        Plaintiff,<br><br>        v.<br><br>ICICLE SEAFOODS, INC.,<br><br>        Defendant. | CASE NO. C10-1589RSM<br><br>ORDER ON MOTION REGARDING MAINTENANCE AND CURE |

    This matter is before the Court for consideration of defendant's motion regarding maintenance and cure. Dkt. # 17. Defendant asks for a ruling that the Court shall not compel defendant to authorize and pay for a second surgery on plaintiff's back, and that defendant is acting reasonably in declining to do so. Plaintiff has opposed the motion with a response which defendant contends should be stricken as untimely. In the interest of resolving this matter on the merits, the Court shall deny defendant's motion to strike, and shall consider the responses and replies filed by both parties. Dkt. ## 22, 24, 27, 30. For the reasons which follow, defendant's motion shall be granted.

FACTUAL BACKGROUND

    Plaintiff was working for defendant Icicle Seafoods on a barge near Dillingham, Alaska in June

ORDER - 1

of 2009. On June 30, 2009, he completed an injury report stating that he injured his back in the course of a short ride in a small skiff across rough seas two weeks earlier, on June 13. He did not report any injury or back pain at the time, and did not go to the infirmary for any care for back pain until June 26. Declaration of Kara Heikkila, Dkt. # 20,. Exhibit A. He had been treated for back pain numerous times over the previous four months, but apparently did not fill out any injury reports. After filling out the injury report on June 30, plaintiff was seen the same day at Kanakanek Hospital in Dillingham by D.J. Oconnell, M.D. Dr. Oconnell diagnosed spondylolysis at L4-5 and prescribed analgesics, muscle relaxants, and physical therapy, with no work until July 5. *Id*.

Plaintiff did not return to work but left Alaska and went to Florida. On July 28, 2009, he saw neurosurgeon John Amann, M.D. *Id*., Exhibit C. Dr. Amman examined plaintiff, reviewed the x-rays taken on June 30, and ordered a lumbar MRI and lumbar x-rays with bending. *Id,* p. 5. After reviewing those studies, Dr. Anann diagnosed severe degenerative changes with spondylolistheses at L4-5. *Id.,* pp. 9-11. He also found narrowing of the spinal canal, and subluxation at L4-5, and noted that any one of these conditions could cause back pain. *Id*., p. 11. He also stated that these conditions probably pre-existed the June 13 injury but the injury could have aggravated the conditions and rendered them symptomatic. *Id*. Dr. Anann listed a range of options for treatment, from observation, medication, mild exercise, physical therapy, chiropractic, cortisone injections, epidural steroid injection, and surgery, but noted that surgery was generally reserved for problems that fail to resolve after trying all other treatments. *Id*.

Plaintiff tried several options, including the epidural injection on October 27, 2009 by Fernando Miranda, M.D. Two weeks later it was noted that he had no lasting improvement and was referred back to Dr. Amann for consideration of surgical options. *Id*., pp. 23, 31. Dr. Anann saw plaintiff on May 19, 2010 and discussed the possible risks and complications of laminectomy and fusion. *Id*. The surgery was performed on June 29, 2010 and plaintiff was discharged from the hospital two days later with a good prognosis. *Id*., pp. 78, 80. Dr. Anann followed plaintiff over the next few months, in consultation with Dr. Miranda who managed the pain medication. The goal was to "wean" plainitff off the Exalgo, a narcotic medication. *Id*., p. 88. He was given a "tapering" dose of Hydrocodone on August 31, but Dr.

ORDER - 2

Miranda noted a month later that plaintiff had not tapered down despite clear instructions to do so. *Id.*, p. 94. During this period plaintiff was also diagnosed with degenerative changes to his right hip and to the sacroiliac joints. *Id.*, p. 85.

Dr. Anann saw plaintiff again on October 20, 2010 and noted that a Functional Capacity Evaluation (which found plaintiff 10% impaired) had placed him at the "medium" work level. Dr. Anann opined that plaintiff had now reached maximum medical improvement from his surgery, but that he was not capable of medium work. *Id.*, pp. 105, 107. He refilled plaintiff's hydrocodone prescription as requested, and scheduled a follow-up in two months. On December 21, 2010, plaintiff returned and saw the physician's assistant, Sheryl Bacheldor, PA-C. She renewed the hydrocodone prescription, made some work-related recommendations, and stated that plaintiff need not return to see Dr. Amann for four months. *Id.*, p. 113.

The following day, December 22, 2010, plaintiff went to see a new doctor, orthopedic surgeons Robert Nucci, MD. *Id.*, Exhibit E . Plaintiff chose Dr. Nucci from a list of doctors presented to him by counsel. Deposition of Robert Redner, Dkt. # 41, Exhibit C, p. 252. The intake notes from that initial visit state that plaintiff fractured a lower vertebra on June 13, 2009, bouncing up and down on the bow of the boat in Alaska. *Id..*, Exhibit F, p. 3. Dr. Nucci ordered new MRI images that day. *Id.*, Exhibit E. After reviewing the studies, as well as four pages of records from Dr. Amann's office, Dr. Nucci on January 3, 2011 gave plaintiff an epidural steroid injection to help his pain, and noted that plaintiff was a candidate for further lumbar surgery. *Id.*, pp 27-32. Plaintiff was referred to a pain clinic for follow-up, where he was prescribed hydrocodone and underwent one or more additional epidural injections. *Id.*, pp 66-84. He returned to Dr. Nucci on February 24, 2011, who on that date noted that a herniated disk had been found at L3/4. *Id.*, p. 90. Dr. Nucci noted degenerative changes in plaintiff's spine but stated that "the reason for his pain is the disk herniation at L3/4." *Id*. Plaintiff signed consent forms for the proposed surgery, consisting of fascectomy and multi-level fusion, on February 24, 2011. *Id.*, pp. 93-97. Dr. Nucci's office sent a cost estimate for the surgery to plaintiff's counsel on March 18,

ORDER - 3

2011, placing the estimated cost at $255,300 to $260,000.[1]   Defendant has declined to authorize this second surgery, and has filed this motion to request a ruling from the Court that it is not required to pay for it as part of its maintenance and cure obligation.

## DISCUSSION

Maritime law has long recognized the seaman's right to maintenance and cure for injuries suffered in the course of his service to his vessel. *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 26, 41-41 (1943). Maintenance and cure extends to a seaman "during the time when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962).

Dr. Amann, who treated plaintiff from his arrival in Florida in July, 2009 until plaintiff's scheduled post-operative follow-up visit on December 21, 2010, stated that plaintiff reached maximum medical improvement in October of 2010 following the surgery he performed.   In addition to Dr. Amann's opinion, defendant has presented the declaration of John Burns, M.D., designated as an expert, in support of this motion. Dkt. # 19. Without going into great detail regarding the points raised by Dr. Burns, the Court finds his statements and opinions highly credible. For example, Dr. Burns notes that up through the time of the postoperative MRI in late 2010, no herniated disk at L3/4 was noted by anyone. Declaration of John Burns, Dkt. # 19, ¶ 11. Yet, as noted above, Dr. Nucci pointed to a herniated disk at L3/4 as the actual source of plaintiff's back pain. There is no evidence connecting this herniated disk to the June 13, 2009 boat ride. Further, as Dr. Burns pointed out, there is no evidence in the medical record of any traumatic injury that occurred on June 13, 2009, and in particular no evidence of a compression fracture. *Id.*, ¶ 6. Yet Dr. Nucci's notes indicate plaintiff's incurred a lower vertebra fracture as a result of the boat ride that day. These inconsistencies create an issue of fact as to the basis

---

[1] On December 22, 2010, the date of plaintiff's first visit to Dr. Nucci, plaintiff's counsel contacted Dr. Nucci's office by letter to request that charges for treatment be presented to them, pending the outcome of this litigation. Declaration of Kara Heikkila, Dkt. # 20, Exhibit F, p. 25. This letter, which was signed by plaintiff as well as counsel, provided that the law firm would not be independently liable for the charges, and in the event litigation was not resolved favorably payment of charges must be discussed with the client (plaintiff).

ORDER - 4

for Dr. Nucci's recommendation for another back surgery and defendant's obligation to pay for it.[2]

Dr. Burns has opined that plaintiff's degenerative condition was "of longstanding duration," and that on a more probable than not basis, the "trauma' of June 13, 2009 did not "cause, alter or accelerate" the preexisting condition. *Id*., ¶ 6.  This is a reasonable conclusion in light of the fact that plaintiff did not seek treatment for back pain until June 26, thirteen days later, and did not fill out an injury report until June 30, seventeen days later.  Dr. Burns' declaration, together with other facts of record, creates a genuine issue of material fact regarding causation for plaintiff's back pain, such that the question must be tried to the jury.  In light of this factual issue, defendant is acting reasonably in declining to pay for further treatment by Dr. Nucci.

## CONCLUSION

Defendant's motion regarding their obligation to provide maintenance and cure, in the form of surgery recommended by Dr. Nucci, is GRANTED.  The issues of causation, and of whether plaintiff reached maximum medical cure following Dr. Amann's surgery, are questions of fact for the jury to determine.  In the interim, the Court finds that defendant is acting reasonably in declining to pay for the treatment proposed by Dr. Nucci.

Dated this 11th day of January 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[2] Defendant has also noted Dr. Nucci's practice of requiring "letters of protection" from his patients, and the publicly-available record of complaints and legal proceedings against him for unnecessary surgery as well as irregularities in coding and billing practices.  *See*, Defendant's Motion, Dkt. # 17, pp. 19-20.  Defendant notes that all such proceedings have been stayed by Dr. Nucci's bankruptcy filing in September, 2010.  *Id*.  Plaintiff has not addressed these serious allegations regarding Dr. Nucci in any way.

ORDER - 5